RALPH G. ALBRECHT, as Ancillary Administrator, etc., Plaintiff, v. THE ROBERT DOLLAR COMPANY et al., Defendants.

Supreme Court, New York Special Term, July 3, 1924.

Accounting — action to compel accounting of pro rata share of profits arising from munitions contract — agreement provided share of plaintiff's intestate should be 6.99 per cent of total proceeds — prior settlement effected by defendant Dollar Company on behalf of all interested in venture predicated upon certain percentages of $900,000 distributable — defendant Dollar Company assumed trust relationship on behalf of plaintiff's intestate and will be compelled to account for share based upon amount distributable.

In an action to compel an accounting of the *pro rata* share of profits arising from a munitions contract, to which the plaintiff's intestate was a party, it appears that the plaintiff's intestate and the assignor of the defendant Dollar Company agreed that the former should receive 6.99 per cent of the proceeds of the venture, tentatively agreed on as $1,400,000; that due to a shortage in delivery the proceeds shrank to $900,000; that under a settlement plan effected between the defendant Dollar Company, acting on behalf of claimants, and the firm manufacturing the munitions, the sum of $360,000 was determined upon as the amount applicable to distribution under the agreement; that the defendant Dollar Company now contends that by reason of an attempted revocation of the agreement between plaintiff's intestate and the defendant Dollar Company's assignors the estate of plaintiff's intestate is entitled to only 6.99 per cent of the $360,000 allocated under the settlement.

Held, that the attempted revocation of the agreement was void since it was effected by one of the three parties to the pact and only could be revoked by the joint action of all.

Held, further, that the defendant Dollar Company will be compelled to account to the estate of the plaintiff's intestate for $62,910, with interest, 6.99 per cent of the $900,000 agreed upon as the distributable proceeds of the contract, since it assumed not only a trust relationship respecting plaintiff's intestate but actually received money in the settlement as claimant's trustee.

ACTION to compel an accounting.

*Peaslee, Brigham & Gennert* (*Amos J. Peaslee* and *Dexter Brigham*, of counsel), for the plaintiff.

*Wherry & Mygatt* (*Thomas H. Wight, William M. Wherry* and *Frederic E. Mygatt*, of counsel), for the defendant Robert Dollar Company.

PROSKAUER, J. In December, 1914, a contract was made by the Russian government to purchase from a syndicate known as " Colonel Allison Supply Committee of Canada " 2,000,000 shrapnel shells. The contract was taken in the names of the defendants Knaap, Dumbadze and Zimdin. They agreed in writing to an equal division of the profits. On December twenty-second these

three defendants confirmed in writing an agreement to pay Maurice C. Mansfield five cents per shell. In February, 1915, the Canadian Car and Foundry Company agreed with these defendants to take over the contract and to pay them a profit of seventy cents a shell. On March 5, 1915, these three defendants assigned all of their rights in this contract to the Robert Dollar Company, with the proviso that sixty-five-seventieths of the proceeds were to be paid to their joint order and five-seventieths retained by the Dollar Company. The contract between Knaap, Dumbadze and Zimdin and the Canadian Car and Foundry Company expressly provided for advance payments of $150,000, which were made to the Dollar Company and distributed by it. In April, 1915, Knaap, acting under a power of attorney from his associates, directed the Dollar Company to distribute the sixty-five-seventieths in a manner by which he would receive over six times as much as his associates and that " these directions are final and irrevocable." Upon Knaap's return to Petrograd his associates learned through the Dollar Company's representative, Mr. Howe, of this fraud, and on May eighteenth Dumbadze, Knaap and Zimdin entered into a written agreement, which, in so far as here material, provided:

" 4th. To admit the following obligations as against third persons:

"(a) Maurice Mansfield in the amount of $97,750. * * *

" 5th. * * * we simultaneously give the following instructions to The Robert Dollar Company: As to the sums in paragraph 4 the Messrs. Mansfield * * * are to make arrangements according to their own judgment."

The Dollar Company was notified in May, 1915, of the revocation of Knaap's power of attorney and of the May agreement and instructed to make payments in accordance therewith. It refused so to do and wrote Howe: " You will note, by referring to copy of agreement dated April 9th, 1915, that the distribution as therein agreed upon is final and irrevocable, and in order to prevent absolute confusion * * * we must insist that the arrangement of April 9th, 1915, stand. It would be in order, however, for A. A. Knaap to instruct us regarding the distribution of the sums of $50,000 and $867,821, and we are quite willing to accept an order from Mr. Knaap for the distribution of these latter monies to the beneficiaries as mentioned in his letter, dated Petrograd, May 18, 1915, as far as the monies will reach." Howe gave this letter to Knaap, Dumbadze and Zimdin and with them arranged to carry out the intention of the parties by having Knaap write a new letter, which, in so far as is here material, reads: " I now

instruct that out of the sums to be distributed to me and as from time to time collected, you (The Robert Dollar Company) retain 557314/774840 and distribute it in the following manner: 1. To pay to Maurice Mansfield 97750/557314 of each amount retained in accordance with instructions given by Maurice Mansfield." For the Dollar Company Howe wrote: " We will carry out the instructions contained in your letter." Mansfield was notified by Howe of these arrangements. Thereafter Mansfield wrote directly to the Dollar Company instructions for the payment of what might become due to him. He died in January, 1916. Howe, writing for the Dollar Company from San Francisco to his Petrograd office, shortly after Mansfield's death, referred to the instructions of Mansfield as binding.

Then followed confusion worse confounded. Suits were brought against the Canadian Car and Foundry Company by the Dollar Company. Knaap and Lignante, one of the beneficiaries, undertook to and did in fact in 1917 settle their claims directly with the Canadian Car and Foundry Company, assigning to that company all their claims on these funds. They thereupon attempted to revoke Knaap's second instruction. Dumbadze, who had been imprisoned by the Bolshevik government, instructed the Canadian Car and Foundry Company by cable, on his release in December, 1917, to pay no portion of his share to any one but himself.

In this situation Mr. Cahan (attorney for Canadian Car and Foundry Company) and Mr. Lillick (representing the Dollar Company) attempted to bring order out of chaos by settlement. Cahan's testimony, essentially uncontradicted, is that they began negotiations, having before them a statement and a chart of the claims still represented by the Dollar Company, which had been prepared by Lillick. One line therein reads: " Maurice Mansfield und. letter Oct. 8th 97,950/557,314 of 557,314.00....$97,950.00," and the chart accompanying this statement showed this claim as derivative from Knaap's share. Lillick refused to accept settlement for Zimdin (who was still friendly with the Dollar Company) and his own company alone, stating that, under the acceptance by Howe of the trust obligation, the company was bound to act for Mansfield. After long negotiation, $360,000 and interest was paid to the Dollar Company by the Canadian Car and Foundry Company in settlement of the claims of itself and its *cestuis*. While the figures are confusing, analysis indicates their significance. The gross amount originally to be paid was $1,400,000 (seventy cents a shell on 2,000,000 shells). Shortages in delivery of twenty-five per cent reduced the amount actually distributable from $1,400,000 to $1,050,000. A stamp tax of $150,000 had to be paid by some

one and the Canadian Car and Foundry Company claimed that its first payment of $150,000 to the Dollar Company should have been applied to this payment, and that, therefore, it had a right to deduct from $1,050,000 this sum of $150,000. The reasonableness of this contention was properly acquiesced in by the Dollar Company. The total distributable amount thus became $900,000. The proportionate share applicable to the Dollar Company and those for whom it purported to settle was approximately $357,000. The adjustment was made by payment of the round sum of $360,000 and interest.

The Dollar Company argues that since Mansfield's right rests solely on Knaap's second instruction (dated October 8, 1915), the attempted revocation thereof in 1917 defeated his claim. I cannot agree with premise or conclusion. While the second instruction might perhaps have been revoked by the joint action of the associates, it certainly could not be revoked by Knaap alone. Moreover, the Dollar Company itself throughout the negotiations for settlement regarded it as unrevoked and actually settled on behalf of Mansfield. It not only assumed a trust relationship to Mansfield, but actually received money, in the Lillick-Cahan settlement, as Mansfield's trustee.

It remains to determine the extent of Mansfield's share. The agreement was to give Mansfield $97,950 out of the expected $1,400,000, or 6.99 per cent. The expectation was not realized. The total profit did not exceed $900,000. Mansfield was to be paid only out of profits and *pro rata;* his recovery must, therefore, be limited to 6.99 per cent, his *pro rata* share of the $900,000, which the Canadian Car and Foundry Company was obligated to pay. Applying this percentage to the $900,000, leaves $62,910 as the sum to which Mansfield was entitled.

The Dollar Company insists that the settlement effected was on behalf of all interested in the venture and that, therefore, Mansfield should get only 6.99 per cent of $360,000. But Cahan's undisputed testimony shows that he was willing to settle with the Dollar Company only on behalf of the following beneficiaries: Robert Dollar Company with a claim for $89,285.70, representing 6.37 per cent of the original $1,400,000; Zimdin with a claim of $217,526.50, or 15.537 per cent of the original $1,400,000; Mansfield with a claim of $97,950, or 6.99 per cent of the original $1,400,000; Setchinsky with a claim of $47,500, or 3.39 per cent of the original $1,400,000; Wolfsohn with a claim of $97,750, or 6.98 per cent of the original $1,400,000; and Smith with a claim of $12,436.60, or 0.88 per cent of the original $1,400,000. These beneficiaries, therefore, had total claims of $562,448.80 and repre-

sented approximately 40 per cent of the sums that were to be distributed out of the $1,400,000. Since the venture netted only $900,000, they would collectively be entitled to 40 per cent of $900,000, or $360,000. It is significant that $360,000 is exactly the amount of the settlement between the Canadian Car and Foundry Company and the Robert Dollar Company. In the light of Mr. Cahan's testimony as corroborated by these figures, the Robert Dollar Company cannot possibly contend that it settled with the Canadian Car and Foundry Company for less than $62,910 on behalf of Mansfield.

Having assumed to collect on behalf of Mansfield, the Dollar Company must account to Mansfield for the amount so collected. Judgment that defendant account to plaintiff for $62,910 with interest.

Judgment accordingly.